UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JOANNE CARILLO,<br><br>   *Plaintiff,*<br><br> -against-<br><br>WILDLIFE CONSERVATION SOCIETY,<br><br>   *Defendant*. | 23-CV-7387 (ARR) (PK)<br><br>**OPINION & ORDER** |

ROSS, United States District Judge:

  In the above-captioned action, Plaintiff Joane Carillo brings suit against her former employer, Defendant Wildlife Conservation Society ("WCS"), alleging violations of the Family Medical Leave Act ("FMLA"), Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act ("Title VII"), and the Equal Pay Act ("EPA"); and common law breach of fiduciary duty under New York law. Before me now is WCS's fully briefed motion to dismiss Carillo's First Amended Complaint ("FAC").[1] For the reasons set forth below, I grant in part and deny in part WCS's motion to dismiss.

## BACKGROUND

  From October 1998 until her termination in May 2023, Carillo was a full-time employee of WCS, a non-governmental organization which operates various zoos in New York City. FAC

---

[1] First Amended Complaint, ECF No. 17 ("FAC"); Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 25 ("Def. Mem."); Pl.'s Opp'n, ECF No. 27 ("Pl.'s Opp."); Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), ECF No. 28.

1

at 3, 4.² Throughout the relevant period, Carillo was employed in a "management non-union position of Security/Admissions Supervisor," *id*. at 3, in the "security department at the WCS Prospect Park Zoo," *id*. at 18. The FAC asserts three causes of action against WCS, each of which stems from a different aspect of her employment.

Carillo first alleges that WCS discriminated against her based on her sex, in violation of Title VII and the EPA. Specifically, she alleges that she was the "only female in her position with four other men performing the same duties," but was "paid less than the four other male supervisors, and repeatedly passed over for promotion." *Id*.

Second, Carillo claims that WCS and her supervisor, Dan Castillo, owed her a "fiduciary duty of confidentiality" due to her employee relationship with WCS, and that WCS violated that duty by disclosing her "personal medical information to her co-workers." *Id*. at 11–12. In support of that claim, Carillo alleges that in September 2021, she learned that Castillo had "mention[ed] . . . one" of her health issues to another colleague.³ *Id*. She further alleges that Castillo "reveal[ed] her confidential medical information to other employees" and that those disclosures "upon information and belief . . . [were] the reason WCS refused to promote her" to two "Assistant Manager" positions to which she applied in 2022. *Id*. at 14–15.

Third, Carillo claims that her termination in May 2023 violated the FMLA and ADA. The FAC alleges that Carillo injured her foot and knee during a company holiday event on December 5, 2022, whereupon she was taken to an emergency room, placed in a "boot" with crutches, and referred to an orthopedic surgeon. *Id*. at 4. The orthopedic surgeon provided her

---

² The Court assumes the truth of the factual allegations in the FAC for the present motion to dismiss.
³ The complaint does not name Castillo as an individual defendant or assert claims against him in his individual capacity. Rather, plaintiff alleges that he acted "as an agent of WCS" and therefore WCS is "vicariously liable." FAC at 17.

2

with a letter indicating that she would be unable to work until December 13, 2022, and scheduled her for an MRI and a followup appointment on January 11, 2023. *Id*. During her January 11 appointment, the surgeon informed Carillo that she needed surgery, and that recovery would take approximately six months to a year. *Id*. Carillo requested FMLA leave from WCS sometime in January 2023, which WCS approved. *Id*. The complaint does not allege that Carillo worked in the period prior to WCS's approval of her FMLA leave.

In February 2023, Carillo "requested to return to work" with her boot and crutches. *Id*. WCS denied her request and told her that she could only return to work on "full duty." *Id*. At some point prior to February 22, 2023, Carillo underwent surgery for her injury.[4] *Id*. On February 22, 2023, Carillo's stitches were removed, but her doctor instructed her that she "would remain wearing the boot and using the crutches until at least May 24, 2023." *Id*.

On May 4, 2023, WCS informed Carillo that it was filling her position and that her employment would be terminated, with an effective date of May 15, 2023. *Id*. Carillo asked WCS whether she could keep her position if her doctor cleared her to return to "full duty" work prior to her effective termination date, to which WCS responded "Let's see. We'll discuss." *Id*. at 5. However, on May 5, WCS instead disabled Carillo's work email address and asked her to return any company property in her possession. *Id*.

On May 10, Carillo called WCS and stated that her doctor had cleared her to return to work on May 14, 2023. *Id.* WCS replied that it had to review Carillo's documentation and scheduled a call for the next day. *Id.* On May 11, WCS informed Carillo that her termination remained effective because she was unable to perform the essential functions of her job, claiming

---

[4] Although the complaint does not specify a particular date for the surgery (or even mention that it occurred), the surgery must have taken place prior to February 22, 2023 because the FAC alleges that Carillo "had her stitches removed" on that date.

3

that she remained unable "run" or "pick up a bag of quarters." *Id.* On May 13, 2023, Carillo arrived at WCS and found that her personal belongings had been removed from her desk. *Id.*

## STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), a court "must construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Legal conclusions are not entitled to the presumption of truth, and therefore "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (internal quotation marks omitted).

## DISCUSSION

**I.     Plaintiff's ADA and Title VII Claims Fail for Lack of Exhaustion.**

A "plaintiff seeking to bring a claim pursuant to the Americans with Disabilities Act . . . [or] Title VII . . . must exhaust administrative remedies through the EEOC." *Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F. 3d 52, 57 (2d Cir. 2018) (citations omitted). Exhaustion requires the plaintiff to file a charge of discrimination with the EEOC or an equivalent state or local agency "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Although exhaustion is an affirmative defense on which the defendant bears the burden of proof, *Hardaway v. Hartford*

4

*Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018), the defense "may be properly considered where the where the circumstances are sufficiently clear on the face of the complaint," *Kirk v. Mount Vernon City Sch. Dist.*, No. 23-CV-7441, 2024 WL 3794591, at *4 (S.D.N.Y. Aug. 13, 2024) (internal quotation marks omitted).

The FAC does not allege that Carillo has filed a charge of discrimination with the EEOC or an equivalent state or local agency, and Carillo has not submitted any argument or indication that she has done so. Moreover, Carillo "has not argued—nor do h[er] allegations show—that any equitable exceptions to th[e exhaustion] requirement apply." *Peralta v. 32BJ SEIU*, No. 21-1638, 2022 WL 792164, at *2 (2d Cir. Mar. 16, 2022). I therefore grant Defendant's motion to dismiss Carillo's Title VII and ADA claims based on her failure to exhaust her administrative remedies. *See Soules*, 882 F.3d at 57.

## II. Plaintiff Has Failed to Allege a Claim Under the FMLA

Carillo's primary claim is that WCS violated the FMLA, 29 U.S.C. § 2601 *et seq*, by failing to reinstate her to her prior position of employment after she took FMLA protected leave. Courts in this circuit recognize two types of FMLA claims—"interference" claims and "retaliation" claims. *See Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004) (differentiating between the applicable standards for each type). The FAC fails to state either claim.

### A.  Interference

To state an interference claim, a plaintiff "must [allege] that the defendant denied or otherwise interfered with a benefit to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016); *see also* 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain or deny the exercise of or the

5

attempt to exercise [ ] any right provided under this subchapter."). A prima facie case of FMLA interference requires the plaintiff to establish five elements:

> 1) [T]hat she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA.

*Graziadio*, 817 at 424.

Carillo has failed to allege that WCS denied her any FMLA benefit to which she was entitled. The FAC alleges that she requested FMLA leave and WCS approved it, and is devoid of any allegation that WCS "discourage[ed]" her from using leave or engaged in "manipulation . . . to avoid responsibilities under [the FMLA]." 29 C.F.R. § 825.220(b). Moreover, despite Carillo's failure to allege a precise date on which her FMLA leave began, the FAC's vague allegation that WCS approved her leave in "January of 2023" demonstrates that Carillo received all twelve weeks of leave to which she was entitled under the statute. FAC at 4. *See Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 161 (2d Cir. 1999) ("The FMLA gives eligible employees an 'entitlement' to twelve workweeks per year of unpaid leave '[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" (quoting 29 U.S.C. § 2612(a)(1)(D)).

The FAC alleges that Carillo was absent from work as of December 6, 2022. FAC at 4. Calculating the twelve-week entitlement from that date, her protected FMLA leave expired on February 27, 2023.[5] Even assuming that Carillo's FMLA leave began on January 31, 2023 and

---

[5] Although the FAC alleges that Carillo requested, and WCS approved, her FMLA leave sometime in January 2023, FAC at 4, the FMLA's implementing regulations permit employers to "retroactively designate leave as FMLA leave with appropriate notice to the employee . . . provided that the employer's failure to timely designate leave does not cause harm or injury to the employee." 29 C.F.R. § 825.301(d). The FAC does not allege that Carillo's absences prior to her request for leave were excluded from WCS's designation of her FMLA leave period, nor

that Carillo's absences from work prior to that date were entirely excluded from her FMLA leave, her protected leave would have expired on April 24, 2024. WCS informed Carillo that it was terminating her position on May 4, 2023. FAC at 4. Carillo's allegations therefore establish that she received all of the leave to which she was entitled, and more.

> **1. The FAC Fails to Allege that WCS Improperly Interfered with Her Right to Reinstatement.**

For the same reason, Carillo has failed to sufficiently allege that WCS interfered with her FMLA rights by terminating her employment. Although the FMLA grants eligible employees "the right to be reinstated to the former position or an equivalent position at the end of leave," *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004); *see* 29 U.S.C. § 2614(a)(1), that right expires when the twelve-week statutory period expires, *see Wanamaker v. Town of Westport Bd. of Educ.*, 11 F. Supp. 3d 51, 70 (D. Conn. 2014). "A failure to reinstate claim is not cognizable as a violation of FMLA, where [the plaintiff] remained on leave beyond the expiration of his FMLA leave." *LaRose v. Am. Med. Response of Connecticut, Inc.*, No. 3:21-CV-00948, 2024 WL 747732, at *6 (D. Conn. Feb. 23, 2024) (internal quotation marks omitted); *see also Sabatino v. Flik Int'l Corp.*, 286 F. Supp. 2d 327, 338 (S.D.N.Y. 2003) (finding that where the plaintiff did not return to work at the end of her FMLA leave period, defendants had no obligation to reinstate the plaintiff). Carillo does not allege that she attempted to return to work when her protected leave expired. Instead, the FAC states that Carillo was "instructed by the doctor that she would remain wearing the boot and using the crutches until at least . . . May

---

does it provide any basis to infer that inclusion of that period would have been unlawful. Even under the permissive federal pleading standard, Carillo is not entitled to the purely speculative inference that her FMLA protected leave began on the last possible date absent some factual basis for such an inference. *See Spurlock v. NYNEX*, 949 F. Supp. 1022, 1033 (W.D.N.Y. 1996) (finding complaint insufficiently pled where it failed to allege dates demonstrating plaintiff's eligibility for FMLA leave or dates on when his leave was denied).

24, 2023," and that she "inform[ed] WCS of her medical progress" prior to her termination. FAC at 4. Because Carillo did not seek reinstatement at the end of her leave, she cannot claim that she was denied reinstatement.

Moreover, it is well-settled that an employee who "remain[s] unable to perform the essential functions of his . . . position" at the end of their FMLA leave is not entitled "to be restored to his former position or any other position." *Sarno*, 183 F.3d at 161. The FAC alleges that Carillo was instructed to use the "boot" and "crutches until at least . . . May 24, 2023." FAC at 4. Carillo does not contest WCS's determination that, at the time her leave expired, she was unable to "work on 'full duty'" while using those tools. *Id*. at 4. Her bald allegation "that she could perform the essential functions of her job," *id*. at 6, is wholly conclusory, and the FAC does not elsewhere provide sufficient facts to support that claim. *See Evans v. Nassau County*, 184 F. Supp. 2d 238, 244 (E.D.N.Y. 2002) ("Complaints containing only vague or conclusory accusations . . . are subject to dismissal."). Most notably, the FAC is devoid of any allegations regarding the content of Carillo's job duties, much less that she could perform those duties. *See Reyes v. Phoenix Beverages, Inc*., No. 13-CV-5588, 2016 WL 6068130, at *2 (E.D.N.Y. Oct. 13, 2016) (finding genuine dispute of material fact as to whether "prolonged walking and standing" were essential functions of plaintiff's job based on extensive review of his job duties).

Instead, Carillo alleges that, after she was informed of her termination, she submitted additional medical information to WCS and it continued to deny reinstatement. FAC at 5. She further alleges that WCS's purported basis for doing so was that she was unable to "run" or "pick up a bag of quarters," even though neither of those tasks were part of her "job description." *Id*. at 5. Carillo's dispute with the illustrative examples cited by WCS is insufficient to create a reasonable inference that she was improperly denied reinstatement. First, her allegation that

8

WCS erroneously relied upon her inability to perform certain non-essential functions fails to establish that she could perform those functions that *were* essential. Second, those statements were made months after her leave expired, and therefore shed no light on whether Carillo could perform her essential job functions *when her entitlement to leave expired*.

Finally, even if the FAC had sufficiently alleged that Carillo was both willing and able to return to work at the expiration of her leave, the FAC would still fail to state a claim for reinstatement. The FMLA's implementing regulations provide that, with proper notice, an employer may condition reinstatement upon "certification from the employee's health care provider that the employee is able to resume work." 29 C.F.R. § 825.312(a) (the "standard" fitness certification). In addition, with proper notice, the employer "may [also] require that the certification specifically address the employee's ability to perform the essential functions of [her] job" as listed by the employer. *Id*. § 825.312(b) (the "specific" fitness certification). The FAC makes clear that WCS required at least the standard form of fitness certification,[6] but fails to allege that Carillo submitted that certification upon the termination of her leave or any facts indicating that WCS's request for certification was improper. *See* FAC at 4–5. Instead, the FAC alleges that Carillo first submitted "medical documentation that she could return to work," Pl's. Opp. at 16, *after* she was notified of her termination and *after* her statutory leave period had expired, FAC at 5 (alleging that Carillo informed WCS on May 10, 2023 that her doctor "cleared her to return to work on May 14, 2023"). By that point, Carillo's entitlement to reinstatement had

---

[6] The FAC's allegations do not specify whether WCS required a specific fitness certification in addition to the standard fitness certification. *See Reyes v. Phoenix Beverages, Inc*., 207 F. Supp. 3d 206, 220 (E.D.N.Y. 2016) (distinguishing "the 'standard' fitness-for-duty certification" and the "specific" fitness-for-duty certification). That distinction is not material here, however, because the FAC does not allege that Carillo submitted either form of certification until well after her leave had expired.

9

long since expired, and her belated submission of a fitness certification does not revive that entitlement. *See* 29 C.F.R. § 825.313(d) ("Unless the employee provides either a fitness-for-duty certification or a new medical certification for a serious health condition *at the time FMLA leave is concluded*, the employee may be terminated." (emphasis added)).

### 2. Carillo's Remaining Arguments Fail to Establish FMLA Interference.

Although Carillo also implies that WCS was required to offer her accommodations such that she could return to work on less than "full duty," *id.* at 4, that argument does not demonstrate that she was entitled to reinstatement. "While Defendant's alleged failure to provide reasonable accommodations could give rise to a claim under the ADA," courts in this circuit have repeatedly concluded that the FMLA does not require employers to provide reinstatement with reasonable accommodations. *Passante v. Cambium Learning Grp.*, No. 23-CV-406, 2024 WL 4171026, at *15 (E.D.N.Y. Sept. 12, 2024) (collecting cases).

Finally, Carillo does not allege that WCS failed to notify her as to the length of her FMLA leave period or its fitness certification requirements. Even if she had made that allegation, she does not allege that the lack of such notice impeded her exercise of her entitlement to reinstatement. *See Sarno*, 183 F.3d at 162 (noting that a claim premised on "lack of notice of the statutory 12-week limitation on FMLA leave" must allege that it impeded or affected plaintiff's right to reinstatement.); *cf. Powell v. Metro One Loss Prevention Servs. Grp.*, No. 12-CV-4221, 2013 WL 3956377, at *9 (S.D.N.Y. July 26, 2013) ("Courts have broadly held that an employer's failure to comply with the FMLA's notification requirements will give rise to an FMLA interference claim, where prejudice to the employee can be shown to have arisen from the failure.").

### B. Retaliation

10

By contrast, the FAC sufficiently alleges an FMLA retaliation claim. To establish a prima facie case of FMLA retaliation, plaintiff must allege that "1) [s]he exercised rights protected under the FMLA; 2) [s]he was qualified for his position; 3) [s]he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza*, 365 F.3d at 168.[7] A retaliatory termination is actionable as FMLA retaliation, and to state a claim a plaintiff need only show that her protected activity was a "motivating factor" in her employer's termination decision. *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 168 (2d Cir. 2017). Nonetheless, an "employer can replace an employee who has not returned to work at the end of the FMLA leave" so long as "the employer is not doing so to punish the employee for exercising her FMLA rights." *Passante*, 2024 WL 4171026, at *16 (quotation omitted).

The FAC alleges that WCS relied upon Carillo's inability to "run" or "pick up a bag of quarters" as the basis for its refusal to reconsider her termination, and that those tasks were not part of her job duties. FAC at 5. As previously discussed, that allegation is insufficient to demonstrate that WCS interfered with Carillo's entitlement to reinstatement, as any such entitlement had long since expired. Nonetheless, the allegation does demonstrate that WCS partially relied on a pretextual justification and is therefore sufficient to state a retaliation claim, as such claims turn on the employer's subjective motivations for its adverse action. *Patel v. NYU Langone Hosps.*, No. 20-112, 2021 WL 4852426, at *3 (2d Cir. Oct. 19, 2021) ("An employer violates the FMLA when it considers an employee's use of FMLA leave as a negative factor in its decision to terminate him." (internal quotation marks omitted)); *see also Graziadio*, 817 F.3d at 430) ("A plaintiff may prove . . . retaliation . . . by demonstrating weaknesses, implausibilities,

---

[7] The Parties do not dispute the first three elements.

11

inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action."); *Passante*, 2024 WL 4171026, at *15–16 (holding that, although plaintiff failed to allege FMLA interference claim because she was terminated after she was unable to return to work at expiration of her twelve weeks of leave, plaintiff sufficiently alleged that termination was motivated by retaliatory intent).

Nonetheless, I briefly note that the FAC's allegations are only barely sufficient to state a retaliation claim. WCS made its initial termination decision after Carillo's FMLA leave expired and she failed to return to work or provide certification of her fitness for duty. FAC at 4–5. WCS's subsequent reliance upon pretextual justifications suggest that the initial decision was also motivated by retaliatory intent, *see United States v. Goffer*, 721 F.3d 113, 124 (2d Cir. 2013) ("Subsequent acts are frequently probative as to intent."), but that inference is quite weak given that WCS continued to employ Carillo for an additional two months after her FMLA leave expired.[8]

### C. Conclusion

For the reasons set forth above, I grant WCS's motion to dismiss Carillo's FMLA interference claim but deny that motion as to her FMLA retaliation claim.

## III. Equal Pay Act

Carillo also asserts that WCS violated the EPA, 29 U.S.C. § 206(d)(1). In support of that claim, plaintiff alleges that she "was the only female in her position with four other men performing the same duties" and that "upon information and belief [she] was paid less than the

---

[8] As discussed above, Carillo was absent from work beginning on the date of her injury on December 5, 2022, and therefore her leave would have expired on February 28, 2023.

four other male supervisors, and repeatedly passed over for promotion." FAC at 18. That conclusory allegation is insufficient.

The EPA requires employers to provide equal pay to male and female employees who perform "equal work on jobs . . . which require[] equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C.A. § 206(d)(1). As the Second Circuit has made clear, a plausibly pled "EPA claim must include 'sufficient factual matter, accepted as true' to permit the reasonable inference that the relevant employees' job *content* was substantially equal." *E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 256 (2d Cir. 2014) (emphasis in original) (quoting *Iqbal*, 556 U.S. at 678). "[B]road generalizations drawn from job titles" are insufficient; instead, a plaintiff must tether her allegations to the "*actual* job duties" she and her comparators performed. *Id*. at 257.

The FAC does not allege what Carillo's own job duties were, much less those of her comparators. Her sole allegation is that she held the same "position with four other men performing the same duties." FAC at 18.[9] That is plainly insufficient. *See E.E.O.C. v. Port Auth.*, 768 F.3d at 258 (holding that allegations that "attorneys had the same job code; were evaluated according to the same broad criteria; were paid according to the same 'maturity curve'; and were not limited to distinct legal divisions" failed to state a claim under the EPA); *Eng v. City of New York*, 715 F. App'x 49, 52 (2d Cir. 2017) (affirming dismissal of EPA claim where plaintiff "at no point provide[d] factual allegations about her or the comparators' job duties, skills, efforts, or

---

[9] Carillo's opposition to the motion to dismiss attaches a letter which contains further allegations about her and her asserted comparators' job duties. Pl's. Opp. at 16. Those allegations were not contained in her FAC, and it is well-settled that a plaintiff "cannot amend [her] complaint by asserting new facts . . . for the first time in opposition to [the d]efendant's motion to dismiss." *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209, n.8 (S.D.N.Y. 2013). I therefore cannot consider those facts here. *See Rodriguez v. Holder*, No. 11-cv-2124, 2014 WL 6983401, at *3 (E.D.N.Y. Dec. 10, 2014).

13

responsibilities to demonstrate that their respective jobs were substantially equal."). Carillo cannot simply allege that WCS employed men with the same job title and conclusorily state that their job duties were equivalent. *See Faughnan v. Nassau Health Care Corp.,* No. 19-CV-03171, 2021 WL 1566138, at *8 (E.D.N.Y. Mar. 18, 2021) ("[A]lleging an overlap in title . . . is not enough" to plead an EPA claim.) (collecting cases).

Finally, Carillo's claim that she was denied promotions based on her sex is not actionable under the EPA. *See Kassman v. KPGM LLP*, 925 F. Supp. 2d. 453, 471 (S.D.N.Y. 2013) ("[T]he EPA does not afford a remedy for denial of promotions or 'titles[.]'"); *see also Boatright v. U.S. Bancorp*, No. 18-CV-7293 , 2020 WL 7388661, at *13 (S.D.N.Y. Dec. 16, 2020) ("It does not matter for [purposes of the] EPA how it came to be that there were no similarly situated employees."), *aff'd*, 2022 WL 351059 (2d Cir. Feb. 7, 2022). The EPA requires employers to provide equal pay to male and female employees who perform "equal work;" but it does not require employers to provide male and female employees with "equal work." 29 U.S.C.A. § 206(d)(1). An alleged failure to promote based on sex must be asserted under Title VII. *See Kassman*, 925 F. Supp. 2d. at 471.

Carillo's equal pay claim is therefore dismissed.

## IV. Fiduciary Duty of Confidentiality

Finally, Carillo alleges that her supervisor shared information about her medical history with other WCS employees in an effort to undermine her career, and claims that those acts establish that WCS breached the asserted fiduciary duty of confidentiality that WCS owed to her due to the parties' employment relationship.[10] That claim is meritless. Although New York

---

[10] Carillo alleges that she is a resident of New York and that WCS is incorporated and headquartered in New York. FAC at 2. I therefore have diversity jurisdiction over plaintiff's state law claim. 28 U.S.C § 1332.

recognizes a common law claim for improper disclosure of medical information, *see Doe v. Guthrie Clinic, Ltd.*, 22 N.Y.3d 480 (2014), it does not apply to the circumstances here.

"To state a claim for breach of confidence under New York law, a plaintiff must plead that (1) the defendant assumed a duty of confidentiality, (2) the defendant intentionally, knowingly, or negligently breached that duty, and (3) the plaintiff was damaged as a result of that breach." *Kane v. Univ. of Rochester*, No. 23-CV-6027, 2024 WL 1178340, at *12 (W.D.N.Y. Mar. 19, 2024) (collecting cases). Carillo's claim fails on the first element; she has not, and cannot, plead that WCS owed her a duty of confidence in her medical information.

Courts analyzing the duty of confidence in medical information have primarily applied that duty to "healthcare provider[s]," *id.*, and "medical corporation[s]," *Guthrie Clinic*, 22 N.Y.3d at 485 ("A *medical corporation* may . . . be liable in tort for failing to establish adequate policies and procedures to safeguard the confidentiality of patient information." (emphasis added)). WCS is not a healthcare or medical corporation (that treats human patients); Carillo alleges only that WCS operates various zoos in New York. FAC at 3. And while courts have recognized a variety of relationships that create a duty of confidentiality as to non-medical information more generally, *see e.g., United States v. Dist. Council of New York City*, No. 90-CV-5722, 2013 WL 2451737, at *6 (S.D.N.Y. June 5, 2013) (holding that union owed duty of confidentiality to its members), Carillo cites no authority for the proposition that an employer owes such a duty to its employees. Indeed, courts have uniformly rejected the idea that employers owe employees such a duty. *In re Canon U.S.A. Data Breach Litig.*, No. 20-CV-6239, 2022 WL 22248656, at *11 (E.D.N.Y. Mar. 15, 2022) ("New York courts do not recognize[ ] a breach of confidence claim brought by an employee for a third party's theft of her [personal identifying information]." (internal quotation marks omitted)); *see also Ziccarelli v. NYU Hosps.*

15

*Ctr.*, 247 F. Supp. 3d 438, 450 (S.D.N.Y. 2017) (finding complaint stated claim against defendant hospital where employee's medical information was improperly disclosed "in his role as a patient" of hospital rather than as its employee). Moreover, "New York courts have consistently found that employers are not fiduciaries for their employees." *In re Waste Mgmt. Data Breach Litig.*, No. 21-CV-6147, 2022 WL 561734, at *6 (S.D.N.Y. Feb. 24, 2022).; *see also Rather v. CBS Corp.*, 886 N.Y.S.2d 121, 125 (1st Dep't 2009) (collecting cases).

The FAC's scattered implications that WCS entered an implied contract to maintain the confidentiality of her medical information also fails to state a viable claim. Such claims are "more properly cast . . . in tort rather than contract." *Doe v. Guthrie Clinic, Ltd.*, 519 F. App'x 719, 721 (2d Cir. 2013); *see also Kane*, 2024 WL 1178340, at *10 ("Courts addressing claims of unauthorized disclosure of health-related information have repeatedly rejected implied contract claims.").

The import of these cases is clear: WCS did not owe a duty of confidentiality in Carillo's medical information due to their employment relationship. Because "[n]o fiduciary duty . . . exists," the "claim for breach of fiduciary duty must be dismissed." *In re Waste Mgmt. Data Breach Litig.,* 2022 WL 561734, at *6.

## V.    Conclusion

For the foregoing reasons, I **DENY** WCS's motion to dismiss Carillo's FMLA retaliation claim, and **GRANT** WCS's motion to dismiss as to all other claims. However, I **GRANT** Carillo leave to amend her complaint in part.

Leave to amend a pleading shall be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a), and should not be denied unless: (1) the movant acts in bad faith, (2) the amendment sought will be futile, (3) the motion is filed after undue delay, or (4) granting leave

16

to amend would prejudice the adverse party. *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Davidson v. Cnty. of Nassau*, No. 18-CV-1182, 2020 WL 956887, at *4 (E.D.N.Y. Feb. 26, 2020) (internal quotation marks omitted).

There is no evidence of bad faith, undue delay, or prejudice at this early stage in the proceedings, which means the claims should only be dismissed with prejudice if amendment would be futile. Amendment of Carillo's FMLA and EPA would not be futile, as she may be able to allege sufficient facts to state a claim under those statutes. *See* Pl's. Opp. at 16. Carillo's FMLA and EPA claims are **DISMISSED** without prejudice. However, amendment would be futile as to Carillo's Title VII and ADA claims, as she has failed to exhaust her remedies and offers no argument that her failure to exhaust should be excused. Similarly, Carillo cannot allege that WCS owed her a duty of confidentiality due to their employment relationship. The FAC's Title VII, ADA, and duty of confidentiality claims are therefore **DISMISSED** with prejudice. Carillo is directed to file her second amended complaint by no later than October 2, 2024.

SO ORDERED.

/s/
Allyne R. Ross
United States District Judge

Dated:     September 18, 2024
           Brooklyn, New York